## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-01172-SCT

### *IN RE: RALPH HIGGINBOTHAM*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/93 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILBUR O. COLOM |
| | DEWITT T. HICKS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  ROBERT E. SANDERS |
| | JOHN C. HENEGAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 6/25/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/16/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Today, we are confronted with the question whether our circuit courts have jurisdiction to address claims of procedural irregularity in the implementation of our statutory scheme for the removal of certain officials and whether that scheme, as it applies to "judicial officers" offends the constitutional doctrine of separation of powers. We conclude that the circuit court correctly declined to exercise jurisdiction at the time and in the manner requested and that the statutory scheme does not violate the separation of powers provision of our constitution. Accordingly we affirm the judgment of the circuit court dismissing the official's action.

I.

¶2. Ralph Higginbotham appeals from of a decision by the Hinds County Circuit Court dissolving a temporary restraining order and dismissing his complaint for lack of subject matter jurisdiction.

¶3. On September 28, 1993 Higginbotham, filed a complaint against Governor Kirk Fordice, Lieutenant Governor Eddie Briggs, the three chancellors selected as a Removal Council and the

Circuit Clerk and County Registrar for Noxubee County in the Circuit Court of Hinds County. Higginbotham claimed that his constitutional rights were violated by an order entered by the Lieutenant Governor, acting on behalf of Governor Fordice, convening a Removal Council for the purpose of considering whether there was a substantial basis for removing Higginbotham from his position as Supervisor of Noxubee County. Higginbotham, in his complaint as later amended ore tenus, prayed for recall of the proclamation entered by the Governor, and for a permanent stay ordering the Governor to refrain from convening a removal council. Higginbotham argued that the removal statute was unconstitutional and violated the separation of powers doctrine. He further argued that certain procedural steps in the statutory scheme had not been complied with and that he had been denied due process by the failure of the office of the governor to fully consider his objections to the certification of sufficient signatures to require removal.

¶4. In addition to the complaint, Higginbotham filed a motion for a temporary restraining order to restrain the execution of the Governor's order convening the removal council. The circuit court granted the motion and issued a temporary restraining order. The Governor filed a motion to dissolve the temporary restraining order and dismiss the complaint. Similar motions were also entered by Johnny Kinard and Syble Wesley, affected registered electors who intervened in the proceeding.

¶5. Miss. Code Ann.§ 25-5-3 empowers the Governor to remove county officers pursuant to the provisions of the removal statutory scheme. Miss. Code Ann. § 25-5-3 et seq. (1972). In accord with that scheme, petitions were filed requesting that Higginbotham be removed from office. These petitions alleged that Higginbotham failed to properly conduct the duties of his office. The petitions stated their purpose on the first page and each signature page was dated and contained at the bottom thereof the admonition that signatories could not withdraw their signatures as prescribed by statute. Miss. Code Ann. §§ 25-5-9, -11. Each petition was verified by a qualified elector certifying that the each signer was believed to be a voter; that the date was accurate pursuant to statutory requirements; and that each had been informed of the prohibition against withdrawing signatures. Miss. Code Ann. § 25-5-13.

¶6. On July 22, 1993, the petitions were filed with the circuit clerk. At some point thereafter, Higginbotham, apparently, lodged with the circuit clerk materials contesting the validity of the petitions.

¶7. On July 29, 1993, Carl Mickens, Noxubee County Circuit Clerk and Registrar certified to the governor that he had checked the petitions pursuant to Miss. Code Ann. § 25-5-15 and that it contained the names of 39 electors and that there were 1908 electors registered in "the county (or beat, as the case may be)." Mickens said in a cover letter that he certified only the signatures contained on the first pages of the petitions where the language showing the intent of the petition was contained.

¶8. Mickens also enclosed materials submitted to him by Higginbotham. The record is not quite clear as to all that was enclosed but material in the record reflects affidavits from signatories contradicting the certificates that signatories were told that they could not remove their names or that they did not knowingly or willfully sign a petition for the removal of Higginbotham from office. It also designated signatures that appeared to be duplicates, other than those of qualified electors, or forged.

¶9. On August 11, 1993, the governor returned Mickens' submission "unfiled" under a letter pointing

out that the statutory scheme in question did not allow Mickens to exclude signatures based upon his assessment of the regularity of the petition and that the scheme contemplated "pages for signatures only." Miss. Code Ann. § 25-5-11. Under cover of a letter dated the following day, Mickens filed a certificate to the effect that the petitions contained signatures of 1002 electors and that there were 1908 electors in "the county (or beat...)."

¶10. By letter dated August 23, 1993, Higginbotham, through counsel called the Governor's attention to his previous submission concerning the signatures. He contended that there were "fatal legal deficiencies" in the petitions and requested that the governor not consider them further. He asked to be advised if there would be further steps or legal proceedings.

¶11. The statute provides that any officer sought to be removed "shall have the privilege of submitting evidence in writing, under oath, to the governor as to the question whether or not any signator to the petition was in fact a qualified elector at the time of signing the petition, or has since died." Miss. Code Ann. § 25-5-17. While some of the materials submitted by Higginbotham do not appear to have been submitted under oath those materials did contain affidavits under oath as to particular signatures.[1]

¶12. Without further communication with Higginbotham, the lieutenant governor acting as governor in the governor's absence, on August 24, 1993, issued a proclamation declaring that more than 51% of the qualified electors in Supervisor's District 4, of Noxubee County had signed the removal petition and convening a Removal Council to conduct a hearing on September 30, 1993.

¶13. Higginbotham through letters of counsel, corresponded further with the office of the governor in an apparent effort to have the governor consider his previous submissions and to convince the governor that if he, the governor, did not consider his claims, those claims would not be considered by the Removal Council and Higginbotham would be effectively denied any forum.

¶14. It appears uncontradicted that the Removal Council, consisting of Chancellors Edward Prisock, George Warner and Shannon Clark, met informally to agree upon guidelines for the September 30, 1993 hearing. In his pleadings in the Circuit Court of Hinds County seeking injunctive relief, Higginbotham alleged and supported by affidavit that the Council, at least preliminarily, determined that it had no jurisdiction to determine defects in the proceedings or the constitutionality of the statute.

¶15. After first issuing a temporary restraining order, the circuit court, on its own motion scheduled a hearing on October 4, 1993 to consider defendants' and intervenors' motions to dissolve the order and for dismissal for lack of jurisdiction. At the hearing, defendants contended that the circuit court was without jurisdiction to consider any of the matters before it. They took the position that the governor's actions in accepting the signatures on the petition was beyond review by statute and that the removal council, despite any preliminary determination that it might have made, did indeed have the power to consider whether any part of the statutory scheme had been overlooked, whether Higginbotham had been accorded due process, and whether the statute was constitutional.

¶16. Higginbotham urged that the trial court had jurisdiction to determine whether the statute was constitutional and argued that the statute violated the separation of powers provisions of the constitution and that Higginbotham's right to due process had been violated by the failure of the

governor to accord him an adequate hearing on the validity of the petition prior to issuing the proclamation.

¶17. The circuit court determined that the statutory scheme for the removal of county officers was not an unconstitutional violation of the separation of powers doctrine and Section 177A of the Mississippi Constitution. It concluded that it had no jurisdiction to address the procedural defects alleged. Accordingly, the trial court dissolved the temporary restraining order and dismissed the complaint. It is from this order that Higginbotham appeals. The circuit court denied a stay of removal proceedings pending appeal. This Court declined to issue a stay as well. Higginbotham was removed from office.

## II.

¶18. Higginbotham's separation of powers claim requires no extended discussion. He claims that a county supervisor holds "judicial office" and that, because this is so, removal by a process involving the governor and not the court is a violation of the separation of powers provision of the constitution.

¶19. Clearly the constitution provides for the removal of judicial officers through proceedings which do not involve the court. Sections 50 and 53, Miss. Const. It also provides that the legislature can empower the Governor to remove county officers by an appropriate statutory mechanism. Section 139, Miss. Const. Nothing in Section 53 or 177A, the two sections which specifically provide for the removal of judges, suggests that they are exclusive. Nor has it ever been suggested that judges are not amenable to removal by impeachment under Section 50.

¶20. Thus, the extent to which a county supervisor may be considered a "judicial officer" for these purposes is of no moment. *See **Ball v. Fitzpatrick***, 602 So. 2d 873 (Miss. 1992)("a board of supervisors is a branch of the judiciary"); Compare, ***Mississippi Com'n on Judicial Performance v. Ishee***, 627 So. 2d 283 (Miss. 1993), (the office of county supervisor is not a judicial office within the meaning of the provision in the code of judicial conduct requiring judges to resign before seeking non judicial offices.) This assignment of error is without merit.

## III.

¶21. The remaining question is whether the Circuit Court of Hinds County had jurisdiction to address the procedural concerns brought by Higginbotham with respect to the operation of the statutory scheme in this instance.

¶22. Higginbotham contends that the Removal Council has no authority to address his allegations of duplicate signatures, fraud in obtaining signatures, failure of the petitions to satisfy statutory requirements and deprivation of due process. It is limited, Higginbotham suggests, to a determination whether substantive cause exists for the removal from office. He contends that there must be some authority empowered to review the process lest he be left totally without a remedy for procedural error. He contends that the only and proper body is the court.

¶23. This Court appears to have answered the question whether ordinary judicial review is available to office holders subjected to this statutory scheme, albeit in what could be considered dicta. In ***State***

*ex. rel. Patterson v. Board of Supervisors of Prentiss County,* 234 Miss. 26, 105 So. 2d 154 (1958), this Court considered the statutory scheme, found it constitutional and interpreted it to place beyond the review of the courts the determinations to be made by the Governor and the Removal Council.

¶24. Higginbotham correctly points out that what that court had before it was an attempt to raise issues concerning fraud at a point very late in the proceedings. In the ***Patterson*** case the Removal Council had acted and mandamus proceedings were actually brought by citizens to carry out the order of that council. The officer there sought to raise questions concerning the initiation of the proceedings only at this late date. This Court concluded that in a mandamus proceeding inquiry was limited to the face of the findings of the removal council and the Governor. In doing so, however, it observed that the legislature expressly committed the process of removal to the governor and the prescribed removal council without appeal or review and that whether "wise or unwise, the Act in question is political in nature and was enacted by the Legislature in its exercise of plenary power." ***Id.*** at 157.

¶25. Our constitution provides that the legislature may empower the governor to appoint and remove county and municipal officers in accordance with such regulations as may be prescribed by law. Miss. Const. art. V, § 139. Pursuant to that section the legislature adopted the statutory scheme in question.

¶26. Summarizing the scheme briefly, it provides that upon a petition signed by 51% of the qualified electors in a county district asserting that the official in question has knowingly or willfully failed, neglected or refused to perform any of the duties required of such officer, the governor may convene a removal council consisting of three chancery court judges appointed by the government to hear and determine whether the officer should be removed. Miss. Code Ann. §§ 25-5-7, 25-5-23. The scheme specifically provides that the decision of the removal council as to all matters "preliminary of final, shall be final and not subject to review." Miss. Code Ann. § 25-5-23. The scheme also provides that the governor's determination whether any particular person was or was not a qualified or elector or whether such person has since died shall not be subject to review. Miss. Code Ann. § 25-5-17.

¶27. The scheme provides for certifications from the person or person obtaining the signatures as to the regularity thereof. Miss. Code Ann. § 25-5-13. It also provides for certification by the county registrar as to the number of signatures of qualified electors on the petition and the number of registered electors in the district. Miss. Code Ann. § 25-5-15. The affected officer holder has no involvement in that process. Miss. Code Ann. § 25-5-37(3).

¶28. Higginbotham has challenged the petitions on a number of grounds. Most prominently, he asserts that the petitions in question contain duplicate signatures and that when duplication is eliminated the remaining signatures constitute less than the number required for removal.

¶29. Higginbotham pressed his claim with the governor and it was rejected. The removal council apparently declined to review that claim. The wording of the statute places beyond review, the decision of the governor as to whether a person was a qualified elector at the time of signing the petition or has since died. It does not speak, however, to the question whether a particular person signed more than once or whether there is evidence of fraud in the procurement of the signature. Nor does it, in explicit terms, put the decision of the governor to accept the petition as a whole and issue

a show cause order beyond review.

¶30. The removal council is empowered to determine whether there is "substantial basis for a removal election consistently with the provisions of §§ 25-5-3 to 25-5-37." It is § 25-5-5 which states the grounds for removal. It follows, arguably, that the statutory direction to the removal council is not limited to consideration of cause. On the other hand § 25-5-25 speaking to the judgment of the council is couched in terms of a finding, or not, of sufficient cause. The statute provides that no stenographic record is necessary and that the judgment of the council is final and not subject to review. Miss. Code Ann. § 25-5-23.

¶31. We are faced with an appeal from a decision of a circuit court declining to interfere with the process at a point prior to the hearing conducted by the removal council. This is not an appeal from nor an application for a writ to the removal council. We conclude that the judgment of the circuit court should be affirmed because the process embodied in the statutory scheme is sufficient to give office holders such process as is due under the circumstances. Nothing in that scheme requires the governor to give an officeholder a full fledged hearing on the issue of the sufficiency of the petition. The attempt to prohibit the removal council from proceeding was, at best, untimely. There was nothing of substance to suggest that there had been a material violation of the statutory scheme. We leave to another day whether a decision of a removal council is amenable to review by extraordinary writ for any alleged failure to follow the prescribed scheme or otherwise.

¶32. For the foregoing reasons the judgment of the circuit court is affirmed.

¶33. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. PITTMAN, P.J., NOT PARTICIPATING.**

1. The petitions were obtained by Holly Rigdon, Johnny Kinard, Lucille Simonds, Sara Wesley, qualified electors of Noxubee County, who signed affidavits pursuant to Miss. Code Ann. section 25-5-13 certifying the petition's validity. Reviewing the material in the record, it appears that the petitions contain a total of 1054 signatures. Higginbotham claimed in communication to the governor, after the proclamation, that removal of the duplicate signatures would reduce the number to less than the required 51%. It is unclear whether the circuit clerk removed the duplicate signatures in arriving at the figure 1002, but our count of the signatures removing duplicates and those designated as not qualified electors and void indicates 1003 signatures. Of that number 73 are questioned by Higginbotham. The statute requires "at least 51% of the qualified electors to initiate removal." At least 51% of 1908 would require 974 electors. If the statute were interpreted to require on a majority, 50% +1, or the lowest fraction rounded up to 51% the numbers would be 955 or 964 respectively. None of this, of course, was considered by the circuit court because it concluded that it did not have jurisdiction to review this matter prior to action of the Removal Council. It plays no part in the decision of this Court.